Good morning, Your Honors. My name is Karen Bucher. I represent Kenneth Kilpatrick. In October 2003, Mr. Kilpatrick was in his neighbor's house cleaning it, getting it ready for a rental. He heard the police order him outside. He went outside. The police searched the house. They found a gun. They arrested him, and they charged him on gun charges, which were later dismissed. The issue in this case is whether there's a – Mr. Kilpatrick has presented sufficient evidence for a jury to decide whether or not Officer Curls violated his constitutional rights by planting the gun and filing a police report, which led to his loss of liberty. In this case, Mr. Kilpatrick maintains he did not have a gun at all, and that he presented evidence that he was inside his neighbor's house cleaning it for rental, and he had an agreement with his neighbor to prepare the house for rental, and that his neighbor would testify as to that, and that there was no gun in the house. A question. Yes. The plaintiff alleges here that Hernandez violated certain policies. What specific policy was violated? Is there any evidence in the record that these policies exist? Your Honor, he was very vague on that issue. He was in pro per. He alleged in three different places in the record that policies were violated, but he did not articulate it in the way that an attorney would. And my argument to that is that the pleadings need to be reviewed generally and broadly because he was in pro per, and to give him the opportunity to go to trial and present this evidence. Except this is not on the pleadings. Isn't this summary judgment, which is a little bit different? And also to construe his evidence generally as well, because he was in pro per. He did the best he could in presenting his evidence. But I have to agree with this question. He did not present precise policies that were violated, except for the whole idea that he was kept unsafe and that they allowed this fight to happen, which endangered him and he begged for this not to happen. That was the policy he was referring to, as far as Sergeant Hernandez is concerned. Well, on the summary judgment point, what is the triable issue of fact? I mean, you talk about the dispatch tape. I question whether there's any inconsistency, as the tape only at best says that there may be another subject who may have left an object in the backyard. The comings and goings of Quirio and his colleague are consistent with Quirio going inside the house after they swept it and finding a gun in the bedroom upstairs. And I guess finally, it's hard for me to see where the probation office tape creates any kind of a genuine issue, because it's hearsay on top of hearsay. So I wonder if you could respond to those things and indicate why you think, nevertheless, there's a triable issue of fact on the Sixth Amendment issue. Well, Mr. Kilpractor first states, first of all, that he did not have a gun and he was in that house for a purpose, for agreement with the owner to get it ready for a rental. He also states that he also believes that Mr. – I mean, Officer Quirio went by himself into the house and not all of them together. And also, the helicopter did see two people in the backyard, and it looked like somebody placed an object by the back door. And that's where we believe where the gun was really found and it wasn't Mr. Kilpatrick's gun. And then the jury needs to sort through the testimony of Mr. Kilpatrick, the testimony of the officers, maybe even the helicopter dispatcher, to sort through and decide whether or not the gun was planted. I don't think at this point we can look at this and make a determination either way. Even if us or anyone maybe disbelieve it, we have to take what Mr. Kilpatrick states as truth as far as the summary judgment. Well, but how far does that go? Because when he is merely speculating, for example, I think there must be a policy there somewhere. What – we have to believe him, but what evidentiary force does it have when he is just guessing or assuming? Well, not only his testimony, but he said that his – the owner of the house would testify to explain why he was there. It's one factor the jury can take into consideration. The fact that the helicopter saw someone place an object in the backyard, or actually there were two suspects, the jury can take that into consideration. Also, his own testimony about what happened, the jury can take into consideration and then make a decision, make a credibility decision, who's right and who's wrong. And are there any other questions regarding the Sixth Amendment? On the Fourth Amendment claim, it's the same facts. The district court found that the police officer had qualified immunity because it was reasonable that he had probable cause. And our argument is just the same, that if he did plant the gun, then there was no probable cause to arrest Mr. Kilpatrick. Are there any further questions? I feel that the briefing is complete. I don't think so, but you might want to address the Hernandez claim of inciting a riot in the detention facility. Well, under the law, the prisons need to keep the prison inmates safe. And in this case, he was kept unsafe because he was put in a situation where he was to receive harm. And Sergeant Hernandez knew about what was going to happen. Mr. Kilpatrick saw the fight between the blacks and Hispanics, saw his cellmate get injured, and he called the sergeant to his cell and asked him, please do not allow this to happen again. I'm fearing for my own safety. They had lunch. They came back. And then the doors were open, and the two groups were put together again. And someone said over the intercom, I'm going to open the cells. I don't want no drama, sort of to entice the situation. There was an altercation, and my client received injuries. It appears undisputed that Hernandez wasn't at the detention center on the day in question and hadn't been there for quite some time. Well, the record shows that my client asked for the sergeant to come by, and he announced that his name was Sergeant Hernandez. He filed a grievance. My client filed a grievance with the prison. And they did not deny his presence there at all. And, in fact, in his answer to the complaint, he did not deny his presence. And, in fact, he said that he acted reasonably. I think it was his second affirmative defense that he acted reasonably in this situation. So there was never a denial of his presence until summary judgment. Well, there is now, but I guess your point is there's evidence both ways in the record as it now stands. Yes, and that's what the jury needs to sort through to find out who's right and who's wrong. Okay. You want to save the balance of your time? Thank you, Your Honor. Thank you, Your Honor. Good morning, Your Honors. Richard Luzek for Appellee Carlos Quiroz. Basically, what this case comes down to is the summary judgment was submitted. Plaintiff presented evidence, which he believes is inconsistent. However, as the district court identified, all of the evidence submitted by the plaintiff is consistent with everything that Quiroz submitted in his summary judgment motion. He points to the dispatch tapes to say Lieutenant Clinton, Clinton Berg couldn't have been inside the house because he's indicated that they were going to go in the backyard to look. But that's not inconsistent with what Quiroz says, whether they went in the back or not. By the time Quiroz came out, they had located the weapon. So basically, for the Sixth Amendment issue, you have to ask yourself, did Carlos Quiroz continue to investigate despite the fact that he knew or should have known that the plaintiff was innocent? And in this case, Officer Quiroz was responding to a shots fired call. As he drove up, he spoke with an individual who claimed to be the plaintiff's father, who indicated that his son had been shooting and pointed out the location where his son was at. Quiroz went over to the location. They cleared the house. And as he was searching it, he located the weapon. So I think there's probable cause there, number one, for the Sixth Amendment. Therefore, he can't be found liable. Also, as far as qualified immunity goes, I do believe that a reasonable police officer under these circumstances could believe that his actions are justified under the Constitution. And then as far as the malicious prosecution claim goes, the plaintiff just can't meet any of the three requirements to disprove it. So if there's any questions, I'd be happy to take them. I don't think so. I guess we'll hear from co-counsel. Thank you, Your Honor. Good morning, Your Honors. James Thiebaud for the appellee. Sergeant Hernandez. Counsel, let me tell you what concerns me about the case involving your client. The district court's decision adopts the magistrate judge's report with respect to your client. It really discusses extensively some of the other issues in the case but does not discuss the question of harm at the jail. And at page 23 of the magistrate judge's ruling, which is adopted, the opinion recites that the plaintiff states that he told Hernandez that he feared for his safety and Hernandez said, you know, don't worry about it, and then says, however, Hernandez says he wasn't there and I believe Hernandez. Why is that proper on summary judgment? In other words, it appears that the plaintiff is saying he was there and he's saying, no, I wasn't there the entire month of January. I couldn't possibly have been there. But on summary judgment, why is it proper? Well, there's a couple things, Your Honor. Number one, I think what we have to realize is that the trial court had no evidence from the plaintiff on the summary judgment. Well, it had his sworn complaint and it had the record of his grievance. There was a grievance. So here's what we know, okay. The plaintiff, Mr. Kilpatrick, alleges that he told a Sergeant Hernandez that there had been a fight between Hispanic inmates and African-American inmates that he himself had not been involved in and that he feared for his safety. The question under the underlying Eighth Amendment of violation is whether Sergeant Hernandez knew of facts which would indicate an excessive risk to Kilpatrick's safety. Mr. Kilpatrick's mere report to a Sergeant Hernandez that there had been a fight between other inmates does not meet that element. Otherwise, we just have a mere conclusory report, is what I'm saying. Well, we have a complaint, the civil rights complaint, the amended complaint, page 6, in which the allegation is made that I think for this purpose we take is true, is that he was set up in a cockfight by Sergeant Hernandez. That sounds like intentional. He's set up and he says, you know, and then he's very seriously injured. And that, I believe, in the context of this, is a sworn complaint that counts. Your Honor, it's our position that's a conclusory allegation. You need more than it's a conclusory allegation that they set up a fight between inmates. You've got to have on the floor. So what would be sufficient? Have you set up because they did this, this, and this? Why isn't that sufficient? Because under the Fourteenth Amendment standard, there's two requirements that have to be met. An objective standard that Sergeant Hernandez was aware of facts which gave rise to excessive risk to the plaintiff. But the point is, as I understand what this person is saying in this complaint, he's saying to set up a fight on purpose between the inmates necessarily suggests, it seems to me, that there's an indifference to whether they get hurt during that fight. Again, Your Honor, that's just the allegation. Again, this is summary judgment. What are the facts that were adduced by the plaintiff on summary judgment that Sergeant Hernandez was aware of that would objectively indicate an excessive risk to his safety? That's the one component. Can you tell me if there's any situation in which a prison guard can set up a fight on purpose and that's okay? No, Your Honor, but there's no evidence that Sergeant Hernandez did this, did that in this case. But the plaintiff swears that he did. That's, I mean, you may be exactly right, but I don't understand why it isn't sufficient for him to swear that that happened. Because on the Fourteenth or Eighth Amendment violation, you need specific non-conclusory evidence, number one, that Sergeant Hernandez was aware of specific facts that gave rise to an excessive risk to his safety. That's number one. And number two, that Sergeant Hernandez actually drew the inference from those facts that there was an excessive risk to his safety. There's no such evidence in this case. There is none whatsoever. So you have to – Go ahead. Excuse me, Your Honor. You're through. Go ahead. Finish, please. I'm just saying, in looking at the elements of the Fourteenth or Eighth Amendment violation, you cannot rely on conclusory allegations that there was a risk to his safety. You need evidence. Have I got it right that the allegation is against Hernandez in his official capacity? Well, that's the other thing, Your Honor. So I don't understand where it goes. I mean, what's the effect of that? Because don't you then have to show that there was official prison policy? Correct, Your Honor. It's conceded. It was not disputed in the trial court. It was conceded on appeal that this is a Monell case. That means in addition to evidence of the constitutional violation, you need evidence that the constitutional violation was perpetrated pursuant to, and that's an important word, pursuant to a custom or policy of the sheriff's department or the county. The only thing we have are sporadic allegations in the record that the violations occurred in violation of policy, not pursuant to any custom or policy. And there's no mention of the policy that was violated even. So the record is completely devoid of any evidence whatsoever of an essential element to their case on the Monell. So the only thing that's there is that the constitutional violation. I would submit it, Your Honor, unless there's questions. Thank you, counsel. Ms. Buehr. Just my quick point, Your Honors. We're not conceding that the Eighth Amendment claim is totally a Monell case. It's true. Mr. Kilpatrick did mark the box on his complaint that he was sued. So I'm saying it can be anything else. I mean, he's pursuing him in his official capacity. So how can it can be anything other than a Monell liability case? Well, it's in his individual capacity. I'm sorry? Also, as well as in his individual. Well, where does it say it's in his individual capacity? He chose not to. On his complaint, he chose not to mark that. Yes. So it's an official capacity suit. Yes. What I'm asking this Court, because he was in pro per, that his pleadings can be looked at broadly, and it also can include that he's suing Sergeant Hernandez in his individual capacity as well because he was in pro per. Okay. Anything else? I guess not. Thank you. Thank you, Your Honor. The matter just argued will be submitted. And we'll next hear argument in Mission Bay Jet Sports v. Colombo.
judges: Rymer, Graber, Aldrich